601539-01 RR

UNITED STATES BANKRUPTCY COURT
FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

IN RE: CHAPTER 7

LISA MARIE GOLDEN
STEVEN LESTER GOLDEN
Debtors

BANKRUPTCY NO. 26-00356

**NOTICE OF MOTION TO TERMINATE THE AUTOMATIC STAY BY AMERICREDIT FINANCIAL SERVICES, INC. DBA GM FINANCIAL**

NOTICE IS HEREBY GIVEN of the attached motion to terminate the automatic stay filed by AmeriCredit Financial Services, Inc. dba GM Financial in the above-styled case on the following described property:

2023 GMC Sierra 1500 VIN: 3GTUUBEDXPG239171

Failure to respond in writing to the Court within fourteen (14) days from the date of this notice may result in the requested relief being granted by the Court without a hearing or further notice; but if a response is filed in writing within fourteen (14) days, a hearing on the motion and response will be held at a time, date, and place to be determined by the Court.

Date: June 3, 2026

**Keith D. Weiner & Associates Co., L.P.A.**

/s/ Riley Rodgers
Thomas L. Canary Jr. (#8677)
Riley Rodgers (#13918)
Keith D. Weiner & Associates Co., L.P.A.
1100 Superior Ave East, Suite 1100
Cleveland, Ohio 44114
(216) 771-6500
(216) 771-6540 - fax
bankruptcy@weinerlaw.com

601539-01 RR

UNITED STATES BANKRUPTCY COURT
FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

IN RE: CHAPTER 7

LISA MARIE GOLDEN
STEVEN LESTER GOLDEN
Debtor(s)

BANKRUPTCY NO. 26-00356

**MOTION TO TERMINATE AUTOMATIC STAY
PURSUANT TO BANKRUPTCY RULE 4001, OR FOR ADEQUATE PROTECTION**

Comes the movant, AmeriCredit Financial Services, Inc. dba GM Financial, a creditor herein, by counsel, and for its Motion to Terminate Automatic Stay, or in the alternative, for adequate protection, states its grounds as follows:

1. This contested matter relates to Bankruptcy Petition 26-00356 in the Bankruptcy Court of the Northern District of West Virginia, Clarksburg Division, which Petition is a Chapter 7 proceeding, with the Debtor(s) being Lisa Marie Golden and Steven Lester Golden.

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, as referred under 28 U.S.C. §157, and it constitutes a "core proceeding" within the meaning of the latter statute.

3. This Motion is made pursuant to Bankruptcy Rule 4001, and in conformity with Rule 9014.

4. The Debtor(s), were, as of June 2, 2026, justly and truly indebted to the movant in the sum of $63,551.22.

5. Specifically, the Debtor(s) are in arrears for the month(s) of March 2026 through May 2026 for a total of $4,041.42.

6. The consideration was an obligation for the sum and on the date shown on the Retail Installment Contract, marked Exhibit A.

7. Creditor holds an Electronic Title on the collateral, 2023 GMC Sierra 1500 VIN: 3GTUUBEDXPG239171, a photo static copy of which is attached hereto as Exhibit B.

8. There are no setoffs or counterclaims to said debt, and it is free from any charge forbidden by applicable law.

9. Creditor objects and requests a hearing to any claim of the Debtor(s) seeking to exempt any of said property under §522 (f).

10. Pursuant to the Retail Installment Contract the movant has a valid security interest in the 2023 GMC Sierra 1500 VIN: 3GTUUBEDXPG239171. The value of said property is approximately $39,825.00 per NADA retail.

11. As shown by the additional attachment to the Proof of Claim, the movant properly perfected its security interest by the Electronic Title which has not been terminated and covers the property described above.

12. The Debtor(s) are not paying the creditor and hence the creditor is not adequately protected.

13. **The Debtor(s) Statement of Intent proposes to surrender creditor's collateral.**

14. Movant is suffering and will continue to suffer irreparable harm from continuation of the 11 U.S.C. §362 automatic stay.

15. The movant is presently stayed from enforcing its security interest, however, by the force and effect of 11 U.S.C. §362.

WHEREFORE, movant prays for an Order immediately terminating the §362 Stay notwithstanding BR4001 (1) (4) and barring Debtor(s) right of redemption and the automatic stay is further terminated to allow the Creditor to send to the Debtor(s) any and all notices required by state and/or federal law, regulation or statute and asks that any issues relating thereto be adjudicated at the first hearing held on this Motion.

**Keith D. Weiner & Associates Co., L.P.A.**

/s/ Riley Rodgers
Thomas L. Canary Jr. (#8677)
Riley Rodgers (#13918)
Keith D. Weiner & Associates Co., L.P.A.
1100 Superior Ave East, Suite 1100
Cleveland, Ohio 44114
(216) 771-6500
(216) 771-6540 - fax
bankruptcy@weinerlaw.com

## CERTIFICATE

I hereby certify that the foregoing either has been sent electronically, or by first class mail to the persons listed below on the date that this pleading is filed with the court pursuant to Bankruptcy Rule 9014:

Office of the U.S. Trustee at (registered address)@usdoj.gov

Aaron C. Amore on behalf of the Chapter 7 Trustee's office at aaron@amorelaw.com

Thomas Zeni on behalf of Lisa Marie Golden and Steven Lester Golden, Debtor at tom@zenilaw.com

And by separate envelope, by regular first-class U.S. mail, postage prepaid, to:

Lisa Marie Golden
722 Goff Dr
Albright, WV 26519

Steven Lester Golden
722 Goff Dr
Albright , WV 26519

**Keith D. Weiner & Associates Co., L.P.A.**

/s/ Riley Rodgers
Thomas L. Canary Jr. (#8677)
Riley Rodgers (#13918)
Keith D. Weiner & Associates Co., L.P.A.
1100 Superior Ave East, Suite 1100
Cleveland, Ohio 44114
(216) 771-6500
(216) 771-6540 - fax
bankruptcy@weinerlaw.com

[redacted]

# Retail Installment Contract and Security Agreement

DEAL # [redacted]
CUST #

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| PREMIER CHEV GMC OF MORGANTOWN<br>5392 UNIVERSITY TOWN CENTRE DR<br>MORGANTOWN, WV 26501-2421<br>304-292-9446 | STEVEN L GOLDEN<br>LISA M GOLDEN<br>722 GOFF DRIVE<br>ALBRIGHT WV 26519 | No. ______<br>Date 05/20/2023 |

☐ Business or commercial purpose Contract. ☐ Agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate | Finance Charge | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid when you have made all scheduled payments. | The total cost of your purchase on credit, including your down payment of $ 2100.00 |
| 8.49 % | $ 27730.76 | $ 82909.00 | $ 110639.76 | $ 112739.76 |

**Payment Schedule.** Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 84 | $ 1317.14 | MONTHLY BEGINNING: 07/04/2023 |
| N/A | $ N/A | N/A |
| N/A | $ N/A | N/A |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 10 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due not to exceed $30.00

**Prepayment.** If you pay off this Contract early, you ☐ may ☒ will not have to pay a Minimum Sales Finance Charge.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2023 | GMC | SIERRA 1500 | Pickup | 3GTUUBEDXPG239171 | 10 |

☒ New
☐ Used
☐ Demo
☐ Rebuilt

N/A

Other:

## Description of Trade-In

2020 Chevrolet Silverado 1500 1GCUYBEFXLZ128989

## Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: N/A N/A . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

## Sales Agreement

**Payment.** You promise to pay us the principal amount of $ 82909.00 plus sales finance charges accruing on the unpaid balance at the rate of 8.49 % per year from the date of this Contract until paid in full. If goods are delivered or services are performed ten days or more from today, sales finance charges will begin to accrue on the date of commencement of delivery or performance. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS:**

☐ **AN INSTALLMENT OF $** N/A **WILL BE DUE ON** ______

☐ **LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS:**
N/A
N/A

EXHIBIT A

Retail Installment Contract-WV Not for use in transactions secured by a dwelling.
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 2015

50131*1*SBPG-FI



05/20/2023 01:58 pm

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☐ You agree to make deferred down payments as set forth in your Payment Schedule.

☐ **Minimum Sales Finance Charge.** You agree to pay a minimum sales finance charge of $ N/A if you pay this Contract in full before we have earned that much in Sales Finance Charges.

☐ **Apply West Virginia Consumer Credit and Protection Act.** Although the West Virginia Consumer Credit and Protection Act may not otherwise apply, you agree with us that this Contract is subject to the provisions of that Act applying to consumer credit sales, including the permissible rates and charges.

## *Itemization of Amount Financed*

| | | |
|---|---|---|
| a. **Cash Price** (incl. sales tax of $ 2898.60 ) | $ | 69630.00 |
| b. Trade-in allowance | $ | 25000.00 |
| c. Less: Amount owing, paid by Seller* to (includes k): GM Financial | $ | 30803.00 |
| d. Net trade-in (if negative, enter $0 here and enter the amount on line k) | $ | 0.00 |
| e. Cash payment | $ | 2100.00 |
| f. Manufacturer's rebate | $ | N/A |
| g. Deferred down payment | $ | N/A |
| h. Other down payment (describe) N/A | $ | N/A |
| i. **Down Payment** (d+e+f+g+h) | $ | 2100.00 |
| j. **Unpaid balance of Cash Price** (a-i) | $ | 67530.00 |
| k. Financed trade-in balance (see line d) | $ | 5803.00 |
| l. Paid to public officials, including filing fees | $ | 78.00 |
| m. Insurance premiums paid to insurance company(ies) | $ | N/A |
| n. Service Contract, paid to: EASYCARE VSC | $ | 7499.00 |
| o. To: EASY CARE GAP | $ | 1500.00 |
| p. To: N/A | $ | N/A |
| q. To: N/A | $ | N/A |
| r. To: N/A | $ | N/A |
| s. To: Doc Fee | $ | 499.00 |
| t. To: N/A | $ | N/A |
| u. To: N/A | $ | N/A |
| v. To: N/A | $ | N/A |
| w. To: N/A | $ | N/A |
| x. To: N/A | $ | N/A |
| y. **Total Other Charges/Amts Paid** (k thru x) | $ | 15379.00 |
| z. **Prepaid Finance Charge** | $ | N/A |
| aa. **Amount Financed** (j + y-z) | $ | 82909.00 |

We may retain or receive a portion of any amounts paid to others.

*If blank or "0", any indebtedness on the trade-in is to be paid by you.

*[This area intentionally left blank.]*

## *Insurance Disclosures*

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below **only** the coverages you have chosen to purchase.

**Credit Life**

☐ Single ☐ Joint ☒ None

Premium $ N/A Term N/A

Insured N/A

**Credit Disability**

☐ Single ☐ Joint ☒ None

Premium $ N/A Term N/A

Insured N/A

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A N/A

By: DOB

N/A N/A

By: DOB

N/A N/A

By: DOB

**Property Insurance. You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us.** The collision coverage deductible may not exceed $ N/A . If you get insurance from or through us you will pay $ N/A for N/A of coverage.

This premium is calculated as follows:

☐ $ N/A Deductible, Collision Cov. $ N/A

☐ $ N/A Deductible, Comprehensive $ N/A

☐ Fire-Theft and Combined Additional Cov. $ N/A

☐ N/A $ N/A

**Liability insurance coverage for bodily injury and property damage caused to others is not included in this Contract unless such coverage is indicated on the line immediately above this provision and the box is checked.**

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A for N/A of coverage.

## Additional Protections

**You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.**

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ Service Contract 8999.00

| | |
|---|---|
| Term | 60 MONTHS OR 100,000 MILES |
| Price | $ 7499.00 |
| Coverage | SEE WARRANTY POLICY FOR COVERAGE |

☒ Gap Waiver or Gap Coverage

| | |
|---|---|
| Term | 84 MONTHS OR MILES |
| Price | $ 1500.00 |
| Coverage | SEE GAP POLICY FOR COVERAGE |

☐ N/A

| | |
|---|---|
| Term | N/A |
| Price | $ N/A |
| Coverage | N/A |

05/20/2023
By: STEVEN L GOLDEN Date

05/20/2023
By: LISA M GOLDEN Date

N/A N/A
By: Date

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time. See the *Minimum Sales Finance Charge* section. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If the initial total amount payable is less than $1,500.00, this credit sale is not primarily for an agricultural purpose, and any scheduled payment is more than twice as large as the average of all other regularly scheduled payments, you may refinance that payment when due. You may do so without penalty. This right does not apply if your payment schedule is adjusted for seasonal or irregular income.

**Returned Check Charge.** If you make a payment required by this Contract by a check that is dishonored, you agree to pay a fee of $25.00.

**Governing Law and Interpretation.** This Contract is governed by the law of West Virginia and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- You fail to perform any obligation that you have undertaken in this Contract.

If you default, you agree to pay the reasonable expenses, including costs and fees authorized by statute, that we incur to realize on any security interest.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Right to Cure.** If you are in default on this Contract due to your failure to make a required payment or otherwise perform pursuant to this Contract, then you may have a right to cure the default. You will not have this right if you have been in default three or more times and you have been given notice of your default three or more times. If you are in default and this right applies, we will send you a written notice describing your right to cure and the amount due and date of the payment you must make to cure the default. This section and your right to cure will not apply to any default other than your failure to make a required Contract payment or otherwise perform pursuant to this Contract.

**Remedies.** If you default on this Contract, we may exercise the remedies provided by law and this Contract after we give you any notice and opportunity to cure your default that the law requires. Those remedies include:

- We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so, provided we give you prior notice and a reasonable opportunity to perform. We are not required to make any such payments or repairs. You will repay us that amount when we tell you to do so. The amount will earn finance charges from the date we pay it at the rate described in the *Payment* section until paid in full.
- We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us. If we repossess or you voluntarily surrender the Property, the law may limit the use of this remedy based on the unpaid balance of the Property.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all attachments, accessories and equipment placed in or on the Vehicle and in all other Property, to the extent permitted by law. The *Description of Property* section discloses if the Vehicle is used, rebuilt or a demonstrator. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You will keep the insurance in full force and effect until this Contract is paid in full.

**Collateral Protection Insurance.** Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including sales finance charges and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**PLEASE READ CAREFULLY! By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:**

- **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**
- **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**
- **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com); or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However, to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**PROCESS TO REJECT THIS ARBITRATION PROVISION.** You may reconsider and reject your approval of this Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. **Rejecting this Arbitration Provision will NOT affect the terms under which we will finance and sell the Property to you or any other terms of this Contract, except that the Arbitration Provision will not apply.**

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

*[This area intentionally left blank.]*

## Notices

**Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Si compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.**

## Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

N/A

By: Signature of Third Party Owner (NOT the Buyer) Date

*[This area intentionally left blank.]*

## Arbitration Provision and Process to Reject

This Contract contains an Arbitration Provision that affects your rights. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

**By initialing this section, you confirm that you read, understand and agree to the Arbitration Provision in this Contract, including the process to reject it.**

Buyer initials: ______________ N/A

## Acknowledgment for Electronic Signatures

☐ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

By: STEVEN L GOLDEN — Date 05/20/2023

By: LISA M GOLDEN — Date 05/20/2023

By: N/A — Date

*[This area intentionally left blank.]*

**Notice to Buyer.** 1. Do not sign this Contract before you read it or if it contains any blank spaces. 2. You are entitled to a completely filled-in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

By: STEVEN L GOLDEN — Date 05/20/2023

By: LISA M GOLDEN — Date 05/20/2023

By: N/A — Date N/A

**Seller** PREMIER CHEV GMC OF MORGANTOWN

By: — Date 05/20/2023

## Guarantor Agreement

**Read and sign the separate *Notice to Cosigner* before signing below.** In order for us to make this Contract with Buyer, you absolutely and unconditionally guarantee payment and performance under this Contract. You agree to all terms of the Contract, jointly and individually with Buyer.

**You acknowledge receipt of a completed copy of this Contract.**

By: — Date 05/20/2023

**Assignment.** This Contract and Security Agreement is assigned to
GM FINANCIAL
PO BOX 1510 COCKEYSVILLE MD 21030
the Assignee, phone ______________. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.

☐ This Assignment is made with recourse.

**Seller** PREMIER CHEV GMC OF MORGANTOWN

By: — Date 05/20/2023

GM Financial

**4001 Embarcadero Drive**
**Arlington, Texas 76014**

**GMF Application #:** ______________
**Please fax completed form to (877) 912-9660**

# ASSIGNMENT

This ASSIGNMENT is attached to and expressly made a part of that certain Retail Installment Contract pertaining to the sale and financing of a motor vehicle (the "Contract") more particularly described as follows:

| **Date of Contract** | **Seller** | **Buyer(s)** |
|---|---|---|
| 05/20/2023 | PREMIER CHEV GMC OF MORGANTOWN<br>5392 UNIVERSITY TOWN CENTRE DR<br>MORGANTOWN, WV 26501-2421 | STEVEN L GOLDEN<br>LISA M GOLDEN<br>722 GOFF DRIVE<br>ALBRIGHT WV 26519 |

FOR VALUE RECEIVED, the Seller identified above ("Seller") hereby sells, assigns and transfers to AmeriCredit Financial Services, Inc. d/b/a GM Financial*, its successors and assigns ("GM Financial"), Seller's entire right, title and interest in and to the Contract and authorizes GM Financial to do every act and thing necessary to collect and discharge obligations arising out of or incident to the Contract. The Assignment of the Contract shall be WITHOUT RECOURSE to the Seller unless noted below. Seller acknowledges that, notwithstanding anything to the contrary contained in said Contract, including references in the Contract to assignees other than GM Financial, if any, this Assignment shall be effective to transfer Seller's rights in the Contract to GM Financial.

PREMIER CHEV GMC OF MORGANTOWN
**Dealer-Seller**

THOMAS MATHEW
**By**

05/20/2023
**Date**

**Assignment of the Contract shall be WITHOUT RECOURSE unless noted below.**

**Dealer-Seller and GM Financial must initial.** ______________________________

*** Assignment is to the following entities in the following states:**

| | | |
|---|---|---|
| **GM Financial of Arizona** | - | **Arizona** |
| **GM Financial of Wisconsin** | - | **Wisconsin** |

PDP ELECTRONIC TITLE DOCUMENT

ELT*WV : ELT - WEST VIRGINIA
Title #: NCV000077086 Title Type :
Issue Date: Lic/Tag/Control #:

VIN . . . . . . . : 3GTUUBEDXPG239171

Vehicle Info. . : 2023 GMC SIERRA SIERRA

Odometer Reading : 10
Date . : 5/20/2023
Status :

Owner Information . : GOLDEN, STEVEN L
Co-Owner . . . . . : GOLDEN, LISA M

Owner address . . . : 722 GOFF DRIVE

ALBRIGHT
WV 26519

Lienholder Information: GM FINANCIAL
PO BOX 1510

COCKEYSVILLE
MD 21030

2nd Lienholder Name :

ELT Sent Date . . . . :
Lien Type . . . . . . :
Owner Driver License# :

Brand code . . . . :

Release name . . . :
Release address 1 :
Rel City/State/Zip : ,

EXHIBIT
B